# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1181
_____

United States of America

*Plaintiff - Appellant*

v.

Antonio Rayshaun Evans

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Northern District of Iowa - Eastern
_____

Submitted: November 20, 2025
Filed: May 12, 2026
_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.
_____

GRASZ, Circuit Judge.

Antonio Evans was convicted of two offenses that can carry enhanced mandatory minimums under 21 U.S.C. § 841(b)(1)(A). The district court[1] decided not to apply the enhancement because, in its view, it could not do so without

_____

[1] The Honorable C.J. Williams, Chief United States District Judge for the Northern District of Iowa.

violating either Evans's Sixth Amendment rights or 21 U.S.C. § 851. The government appeals, and we affirm.

## I. Background

Evans was indicted on six counts, including conspiracy to distribute a controlled substance and distribution of a controlled substance in violation of § 841(a)(1). These counts can both carry an enhanced mandatory minimum sentence when a defendant has previously been convicted of a "serious drug felony." § 841(b)(1)(A).

A "serious drug felony" is "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . , for which a maximum term of imprisonment of ten years or more is prescribed by law," 18 U.S.C. § 924(e)(2)(A)(ii), and "for which — (A) the offender served a term of imprisonment of more than 12 months; and (B) the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense." 21 U.S.C. § 802(58). Evans was previously convicted of possession with intent to deliver cocaine in violation of Iowa Code § 124.401(1)(c), and this offense carries a 10-year maximum sentence. *See* Iowa Code § 902.9(1)(d). So if the government proves the two "incarceration-related facts" — i.e., that Evans served more than 12 months in prison and was released within 15 years of commencing his instant offense conduct — an enhanced mandatory minimum may apply.

Congress outlined the procedure for applying this enhancement in § 851. First, "the United States attorney [must] file[] an information . . . stating in writing the previous convictions to be relied upon." § 851(a)(1). Second, "the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged . . . ." *Id.* § 851(b). Third, "[i]f the person denies any allegation of the information of prior conviction, . . . he shall file a written

response . . . ." *Id.* § 851(c)(1). Fourth, "[t]he court shall hold a hearing to determine any issues raised by the response which would except the person from increased punishment." *Id.* This "hearing shall be before the court without a jury," and "[a]t the request of either party, the court shall enter findings of fact and conclusions of law." *Id.* And fifth, "if the court determines, after [the] hearing, that the person is subject to increased punishment by reason of prior convictions, the court shall proceed to impose sentence upon him . . . ." *Id.* § 851(d)(1).

Here, the government filed an information before Evans's trial giving notice it would seek the enhanced mandatory minimum based on his prior conviction. The government and Evans both proposed jury instructions asking the district court to submit the incarceration-related facts to the jury during his trial, but it did not do so. After Evans's conviction, but before his sentencing, the Supreme Court decided *Erlinger v. United States*, which makes plain that a jury, rather than the court, must find the incarceration-related facts. *See* 602 U.S. 821, 838 (2024). Evans then objected to the application of the enhanced mandatory minimum under § 851(c)(1), arguing the enhancement could not be applied to him because a jury had not found the incarceration-related facts.

The district court agreed, and it initially entered an order stating it would schedule a trial so a jury could resolve whether Evans's prior conviction satisfied the incarceration-related facts. However, it vacated its order and scheduled this case for sentencing without the enhanced mandatory minimum because, in its view, the unique procedural posture of this case presented a catch-22. If the court applied the enhanced mandatory minimum to Evans without a jury having found the incarceration-related facts, Evans's Sixth Amendment rights would be violated. But if the court empaneled a jury to resolve these facts, it would violate § 851, since Evans already objected to the enhanced mandatory minimum and the statute required the court to resolve his objection "without a jury . . . ." § 851(c)(1). The government appeals the district court's decision to schedule this case for sentencing without applying the enhanced mandatory minimum.

## II. Analysis

We have jurisdiction under § 851(d)(2), and we review the district court's legal conclusion that it cannot apply the enhanced mandatory minimum to Evans de novo. *See New v. United States*, 652 F.3d 949, 952 (8th Cir. 2011). Because we agree that the incarceration-related facts cannot be found in this instance without running afoul of either Evans's Sixth Amendment rights or § 851(c)(1), we affirm the district court's decision to sentence Evans without applying the enhanced mandatory minimum.

To start, the government concedes the Sixth Amendment requires a jury to find the incarceration-related facts before the enhanced mandatory minimum can be applied. This was warranted. In *Apprendi v. New Jersey*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). This seems clear, but some confusion existed after *Apprendi* regarding how broadly "the fact of a prior conviction" should be interpreted. For instance, we initially cited *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), to support a broad reading, allowing courts to find facts relating to defendants' past offenses when recidivism enhancements were at issue. *See, e.g.*, *United States v. Williams*, 976 F.3d 781, 787 (8th Cir. 2020), *vacated*, 142 S. Ct. 1439 (2022). We now know that this was wrong. *See Erlinger*, 602 U.S. at 836–39 (rejecting this interpretation of *Almendarez-Torres*). "[A] judge may 'do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of.'" *Id.* at 838 (quoting *Mathis v. United States*, 579 U.S. 500, 511–12 (2016)).

This appeal therefore turns on whether a jury can find the incarceration-related facts at this stage in these proceedings. In our view, it cannot. As the district court explained, Evans has already filed his response to the government's information under § 851(c)(1), and he argues that he is entitled to have a jury resolve whether his

prior conviction satisfies the incarceration-related facts.  In this instance, the statute plainly mandates that "the court" hold a hearing and resolve Evans's objection "*without a jury . . . .*" § 851(c)(1) (emphasis added).  Consequently, the district court rightly decided it cannot apply the enhanced mandatory minimum to Evans in this case without violating either his Sixth Amendment rights or § 851.

The government argues that the court must have "inherent power" to empanel a jury now, so the government is not "deprived . . . of its ability to prove the charged greater offense."  It is mistaken.  The Constitution promises the government neither sentencing enhancements nor a forum to try them.  *See United States v. Liestman*, 97 F.4th 1054, 1058 (7th Cir. 2024) ("Congress is free — subject only to constitutional constraints — to frame its sentencing enhancements . . . ."); *Lockerty v. Phillips*, 319 U.S. 182, 187 (1943) ("Article III left Congress free to establish inferior federal courts *or not* as it thought appropriate." (emphasis added)).  So when Congress creates an enhancement, it gets to choose when and how the enhancement can be applied.  *See L.P. Steuart & Bro. v. Bowles*, 322 U.S. 398, 404 (1944) ("[I]t is for Congress to prescribe the penalties for the laws which it writes.").  While the federal courts  do "possess[] inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases,'" *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (quoting *Link v. Wabash R.R.*, 370 U.S. 626, 630–31 (1962)), these do not include the power to do the opposite of what Congress mandates.  *See, e.g.*, *Luther v. Borden*, 48 U.S. (7 How.) 1, 41 (1849) ("It is the province of a court to expound the law, not to make it.").

As the dissent sees things, the Sixth Amendment and § 851 conflict, so the Constitution automatically displaced § 851 when it was enacted.  *See Collins v. Yellen*, 594 U.S. 220, 259 (2021) ("[A]n unconstitutional provision is never really part of the body of governing law (because the Constitution automatically displaces any conflicting statutory provision from the moment of the provision's enactment).").  That left only § 841's enhancement, which we know cannot be applied unless a jury finds the incarceration-related facts, *see Erlinger*, 602 U.S. at

838, and the Constitution's promise that "[t]he Trial of all Crimes, except in Cases of Impeachment, shall be by Jury." U.S. Const. art. III, § 2, cl. 3. The dissent would therefore direct the district court to empanel a jury pursuant to the Constitution, so the incarceration-related facts can be found.

But the Constitution does not void a statute if it may be applied in some situations without violating the Constitution. *See, e.g.*, *CISPES v. FBI*, 770 F.2d 468, 472–73 (5th Cir. 1985) ("As the Supreme Court has recognized, a statute need not fall *in toto* merely because it is capable of some unconstitutional applications." (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 614 (1973))). So the dissent's reasoning only tracks if § 851 is facially unconstitutional.

"A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *accord Bucklew v. Precythe*, 587 U.S. 119, 138 (2019) ("A facial challenge is really just a claim that the law . . . at issue is unconstitutional in all its applications."). Section 851 can be applied in several situations without defying the Sixth Amendment.

To give a few examples, first, suppose the district court submitted, and the jury found, the incarceration-related facts during Evans's trial. If Evans then lodged the same objection, the district court could have relied on the jury's findings to resolve it, without violating either the Sixth Amendment or § 851. *See United States v. Fields*, 53 F.4th 1027, 1041 (6th Cir. 2022); *see also United States v. Johnson*, 70 F.4th 1115, 1120–23 (8th Cir. 2023). Second, if Evans objected that he had not been convicted of possession with intent to deliver cocaine, *Apprendi* makes plain that the district court could have resolved his objection. *See* 530 U.S. at 490 ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury . . . ." (emphasis added)). And third, assume Evans objected that the elements of his prior conviction did not meet the requirements for the enhancement to apply. There too the district

court could have resolved his objection. *See Erlinger*, 602 U.S. at 838 ("A judge may . . . consistent with the Sixth Amendment . . . determine what crime, with what elements, the defendant was convicted of." (cleaned up)).

Section 851 is therefore facially constitutional, and it was not automatically displaced by the Sixth Amendment, as the dissent suggests. Rather, it is only unconstitutional as applied to Evans. So the district court was right not to apply the enhancement. *See Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 700 n.5 (8th Cir. 2021) ("If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable." (quoting *Republican Party of Minn. v. Klobuchar*, 381 F.3d 785, 790 (8th Cir. 2004))).

This aside, we would not reverse the district court's decision even if we agreed with the dissent. The government never raised this issue — either while this case was before the district court, or on appeal. And "it is old and well-settled law that issues not raised in the trial court *cannot be considered by this court as a basis for reversal*." *Dunn v. Does 1–22*, 116 F.4th 737, 752 (8th Cir. 2024) (emphasis in original) (quoting *Morrow v. Greyhound Lines, Inc.*, 541 F.2d 713, 724 (8th Cir. 1976)). The Supreme Court has also warned that "courts should think hard, and then think hard again, before turning small cases into large ones" by unnecessarily addressing constitutional issues. *E.g.*, *Camreta v. Greene*, 563 U.S. 692, 707 (2011). In our view, this is especially true here, because "woefully inadequate" briefing on this issue "create[s] a risk of bad decisionmaking." *Pearson v. Callahan*, 555 U.S. 223, 239 (2009).

## III. Conclusion

For these reasons, we affirm the district court's decision to set this case for sentencing without applying the enhanced mandatory minimum to Evans.[2]

---

[2]We leave for another day whether we could have severed § 851 and empaneled a jury to find the incarceration-related facts, since no one raised this issue.

STRAS, Circuit Judge, dissenting.

When a statute falls short on constitutional grounds, the first place to look for a remedy is the Constitution itself. Here, the Sixth Amendment tells us that a jury must decide certain facts necessary to raise Antonio Evans's sentence. Then Article III, § 2 confirms that the remedy is to summon one. Neither gives, as the court does, a free pass.

I.

The same section that defines the scope of federal "judicial Power," U.S. Const. art. III, § 2, cl. 1, declares that "[t]he Trial of all Crimes, except in Cases of Impeachment, *shall* be by Jury," *id.*, cl. 3 (emphasis added). *See Eilenbecker v. Dist. Ct. of Plymouth Cnty.*, 134 U.S. 31, 35 (1890) ("[A]rticle 3 of the constitution is intended to define the judicial power of the United States; and it is in regard to that power that the declaration is made that the trial of all crimes, except in cases of impeachment, shall be by jury."), *overruled on other grounds by Bloom v. Illinois*, 391 U.S. 194 (1968). Federal courts have a duty to ensure that one is available, regardless of what a criminal statute says. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."). Congress has some control over *where* a trial takes place, but not *who* gets to decide guilt. *Compare id.* art. III, § 2, cl. 3 (allowing trials for crimes not "committed within any State" to be "at such Place or Places as the Congress *may* by law have directed" (emphasis added)), *with id.* ("The Trial of all Crimes . . . *shall* be by Jury." (emphasis added)). *See also Tullock v. Mulvane*, 184 U.S. 497, 505 (1902) (noting that the "courts of the United States derive all their powers from the Constitution and laws of the United States").

When it comes to the who and what of criminal jury trials, the Constitution leaves no choice. *See Patton v. United States*, 281 U.S. 276, 289–90 (1930) (explaining that the "common law elements" of a trial by jury are "embedded" in Article III and the Sixth Amendment and "beyond the authority of the legislative

-8-

department to destroy or abridge"), *abrogated on other grounds by Williams v. Florida*, 399 U.S. 78 (1970); The Federalist No. 83 (Alexander Hamilton) (explaining that Congress's "discretion, in regard to criminal causes, is abridged by the express injunction of trial by jury in all such cases" in Article III). "Other than the fact of a prior conviction, any fact" that increases the statutory maximum or minimum "*must* be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (emphasis added); *see Alleyne v. United States*, 570 U.S. 99, 108 (2013). Enhancements are no exception.

The one for serious drug felonies raises the minimum from 10 to 15 years when two facts exist: a defendant has previously "served a term of imprisonment of more than 12 months" for a prior drug-related conviction, and "release" occurred "within 15 years of the commencement of the instant offense." 21 U.S.C. § 802(58)(A)–(B); *see id.* § 841(b)(1)(A). Like other elements, they become parts of the "Crime[]" that the court "shall" try "by Jury." U.S. Const. art. III, § 2, cl. 3. Congress does not get to change *those* rules. *See Dranow v. United States*, 325 F.2d 481, 482 (8th Cir. 1963) ("Unquestionably a criminal defendant is guaranteed the right to a trial by jury by Article III, Section 2, Clause 3 of the Constitution of the United States and the Sixth Amendment to the Constitution."); *United States v. Kozel*, 908 F.2d 205, 206 (7th Cir. 1990) ("Congress cannot narrow the scope of the jury trial clauses by statutory enactment.").

The remedy when it tries is what the Constitution prescribes, not once but twice: a "Trial . . . by Jury."[3] U.S. Const. art. III, § 2, cl. 3; *accord id.* amend. VI;

---

[3]Far from waiving the argument, as the court suggests, the government has asked for this remedy all along. "[I]nherent authority" is just another way of referring to "Article III's grant of '[t]he judicial Power.'" *United States v. Tsarnaev*, 595 U.S. 302, 325 (2022) (Barrett, J., concurring) (quoting U.S. Const. art. III, § 2, cl. 1; *see Degen v. United States*, 517 U.S. 820, 823 (1996) ("Courts invested with the judicial power of the United States have certain inherent authority . . . ."); *see also State v. M.D.T.*, 831 N.W.2d 276, 284 (Minn. 2013) (Stras, J., concurring) ("[W]hen discussing 'inherent authority,' we are really referring to the 'judicial power' . . . ." (citation omitted)). And the provision that provides the remedy is the

*Reid v. Covert*, 354 U.S. 1, 9 n.12 (1957) (explaining that the right is "twice guaranteed" because "the fear that [it] might be abolished was one of the principal . . . objection[s] to the Federal Constitution").  Indeed, very few criminal statutes mention who gets to decide guilt, but absent waiver, the answer is *always* a jury.  *See, e.g.*, *Erlinger v. United States*, 602 U.S. 821, 834–35 (2024) (holding that a jury must find that prior violent felonies were "committed on occasions different from one another," even though no statute gives the jury that responsibility (citation omitted)); *Alleyne*, 570 U.S. at 115–16 (explaining that the findings necessary to apply an enhancement for brandishing a firearm "must be found by a jury," despite the lack of a statute explicitly providing for it); *Sandstrom v. Montana*, 442 U.S. 510, 523 (1979) ("[I]n a criminal case the law assigns [the fact-finding function] solely to the jury.").  The same ought to be true when Congress tries to assign the task to someone else, like it did with the serious-drug-felony enhancement.  *See* 21 U.S.C. § 851(c)(1) (giving it to a "court without a jury").  Many courts do not hesitate to remand for a jury determination when the Constitution calls for it.[4]  I would join them.

---

one explaining what the "judicial Power" covers.  U.S. Const. art. III, § 2.  The government's argument may have been clumsy, but I am only answering the question posed.  *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) (making clear that we are "not limited to the particular legal theories advanced by the parties").

[4]*See United States v. Ameline*, 376 F.3d 967, 983 (9th Cir. 2004), *superseded by United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc); *United States v. Booker*, 375 F.3d 508, 514–15 (7th Cir. 2004); *United States v. Henry*, 282 F.3d 242, 253 (3d Cir. 2002).  The practice is particularly "well established" in capital cases.  *Ring v. Arizona*, 536 U.S. 584, 599 (2002) (citation omitted) (discussing the use of juries to determine whether there are aggravating factors that allow imposition of the death penalty); *see Booker*, 375 F.3d at 514 ("Separate hearings before a jury on the issue of sentence is the norm in capital cases.").

## II.

Instead, the court disregards a clear constitutional command. Rather than allowing Article III, § 2 to "automatically displace[]," *Collins v. Yellen*, 594 U.S. 220, 259 (2021), the unconstitutional requirement of holding a "hearing . . . without a jury," 21 U.S.C. § 851(c)(1), it flips the script by allowing the statute to eliminate part of the "judicial Power" and trump a "Trial . . . by Jury," U.S. Const. art. III, § 2, cl. 1, 3.

The court finds comfort in a few constitutional applications, no matter how rare or far-fetched they may be. The Constitution, however, does not give defendants the right to a "Trial . . . by Jury" only when a statute is *facially* unconstitutional. *Id.*, cl. 3. It is true that the "breadth" of the remedy may expand or contract alongside the scope of the challenge. *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019) (citation omitted) (explaining that "classifying a lawsuit as facial or as-applied affects the extent to which the invalidity of the challenged law must be demonstrated and the corresponding *breadth* of the remedy," not the "substantive rule of law" (emphasis added) (citation omitted)). In other words, only those who face a jury-trial violation will receive a jury-trial remedy. *See Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 700 n.5 (8th Cir. 2021) (explaining that "[i]f an as-applied challenge is successful, the statute may not be applied to the challenger" (citation omitted)). But a jury trial is *always* the remedy. To the extent the court suggests otherwise, it is wrong.

The impact of the court's holding is more than just theoretical. Under its logic, a district court will *never* be able to impose the enhancement if a defendant contests the "term of imprisonment" or the date of "release" for a prior conviction. 21 U.S.C. § 802(58)(A)–(B). The statute, after all, categorically eliminates "increased punishment by reason of one or more prior convictions, *unless*" it comes after a "hearing . . . before the court without a jury." *Id.* § 851(a)(1), (c)(1) (emphasis added). It is a condition precedent, meaning the original jury can no more make the findings than a later-summoned one could. *See Webster's Third New International*

-11-

*Dictionary* 2503 (1968) (defining "unless" as "except on the condition that" or "without the accompanying circumstance or condition that"). The statute forbids what the Constitution requires. *See, e.g.*, *Erlinger*, 602 U.S. at 834–35; *Alleyne*, 570 U.S. at 115. Where the court sees a "catch-22," *Ante*, at 3, in the requirement of a "Trial . . . by Jury," I see the "judicial Power" to summon one, U.S. Const. art. III, § 2, cl. 1, 3.[5]

————————————————————

---

[5]There is nothing to sever if the Constitution provides the remedy. But even *if* there were, there is no suggestion that Congress would have preferred no enhancement to a constitutional one. *See Alaska Airlines*, *Inc. v. Brock*, 480 U.S. 678, 685 (1987) (noting the "traditional" rule that an unconstitutional provision only drags down the whole statute if "Congress would not have enacted" what remains).