# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3518
_____

United States of America,

*Plaintiff - Appellee,*

v.

Jason M. Potter,

*Defendant - Appellant.*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: September 27, 2024
Filed: January 15, 2025
_____

Before COLLOTON, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.
_____

COLLOTON, Chief Judge.

A grand jury charged Jason Potter with drug trafficking offenses after a traffic stop during which police seized drugs from his vehicle. Potter moved to suppress the evidence on the ground that the search and seizure violated his rights under the

Fourth Amendment. The district court[1] denied the motion, and Potter was convicted at trial. The district court[2] sentenced him to a term of 360 months' imprisonment. Potter appeals the denial of his motion to suppress and challenges his sentence. We conclude that there was no error, and affirm.

I.

Potter was apprehended after an investigation at a motel in Lee's Summit, Missouri. Police officers were conducting surveillance due to reports of drug activity and stolen vehicles. Potter's vehicle was located in the parking lot. When police ran a computer check on the license plate of Potter's vehicle, they discovered that there was an outstanding warrant for Potter's arrest.

Police then observed Potter leave the motel with a confederate, Daniel Dryden, and place two bags in the back seat of the car. After a few minutes, police observed Dryden drive out of the parking lot with Potter in the passenger seat. The officers conducted a traffic stop and arrested Potter based on the warrant.

Officers discovered that Dryden's license was suspended, so they advised the two men that they would need to find someone else to take the car. Potter gave the name of an acquaintance who could retrieve the car, but the person did not answer three telephone calls from the officers. Dryden told the officers he would walk five

---

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable W. Brian Gaddy, United States Magistrate Judge for the Western District of Missouri.

[2]The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri.

minutes back to the hotel to ask an acquaintance to take the car. He had not returned nearly thirty minutes later. Officers drove to the hotel but could not find Dryden.

Officers then ordered a tow of Potter's car and conducted an inventory search of the vehicle. While making the inventory, the officers seized methamphetamine from the car.

A grand jury charged Potter and Dryden with two drug trafficking offenses. Potter moved to suppress evidence that police seized from his vehicle. The district court denied the motion, and a jury found Potter guilty on both counts. The court imposed a sentence of 360 months' imprisonment. Dryden pleaded guilty and was sentenced to 36 months' imprisonment.

II.

A.

Potter first argues that the evidence seized from his car should have been suppressed because the search and seizure violated his rights under the Fourth Amendment. Although there was undisputedly probable cause to stop the car based on the outstanding arrest warrant, Potter argues that the timing of the traffic stop made the seizure unconstitutional. He also contends that the inventory search of the car was unreasonable.

Potter alleges that police delayed the arrest until he drove off private property so that they could justify a warrantless inventory search of his vehicle after it was stranded on a public roadway. The timing of the seizure did not make it unreasonable under the Fourth Amendment. "There is no constitutional right to be arrested." *Hoffa v. United States*, 385 U.S. 293, 310 (1966). The Fourth Amendment does not require

officers to arrest a suspect immediately upon learning of an outstanding arrest warrant. *United States v. Johnigan*, 90 F.3d 1332, 1336 (8th Cir. 1996). The officers here, moreover, had an appropriate reason to delay: They were conducting an undercover surveillance operation at the motel, and arresting Potter in the parking lot would have alerted others to the ongoing investigation. Potter's supposition that the officers timed the arrest to facilitate an inventory search is also unsupported. There is no showing that the officers knew in advance that Dryden was driving with a suspended license or that no other driver would be available to assume control of the car.

Potter next argues that the inventory search of his car did not comply with departmental policy and was a ruse for discovering incriminating evidence. As part of their "community caretaking" function, police may impound a vehicle for the safety of property and the public. *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). After taking custody of a vehicle, police officers "may conduct a warrantless inventory search . . . to secure and protect vehicles and their contents." *United States v. Williams*, 777 F.3d 1013, 1015 (8th Cir. 2015) (internal quotation omitted).

An inventory search conducted according to standardized police procedures is reasonable. *South Dakota v. Opperman*, 428 U.S. 364, 375-76 (1976). Where an inventory policy does not address a particular scenario, however, a search may still be reasonable as long as the inventory process is not pretextual or used as a "ruse for a general rummaging in order to discover incriminating evidence." *United States v. Morris*, 995 F.3d 665, 669 (8th Cir. 2021) (quoting *Florida v. Wells*, 495 U.S. 1, 4 (1990)). "It is not feasible for a police department to develop a policy that provides clear-cut guidance in every potential impoundment situation, and the absence of such mechanistic rules does not necessarily make an impoundment unconstitutional." *United States v. Petty*, 367 F.3d 1009, 1012 (8th Cir. 2004).

The officers' decision to tow and inventory Potter's car was a valid exercise of their community caretaking function. Potter's vehicle was stopped on a public roadway, and no licensed driver was reasonably available to remove it. The police department's policy authorized officers to tow a vehicle on public property in a similar situation: when the vehicle's operator was taken into custody and neither the operator nor passenger was able to arrange for the vehicle's timely removal. The policy did not address the precise scenario here, where the passenger was taken into custody but the driver was operating without a license and could not continue driving the vehicle. But the impoundment and inventory were consistent with a legitimate purpose of the standard policy to remove seized vehicles from a public roadway and to inventory the contents for safekeeping and avoidance of disputes over lost or stolen property. The officers allowed Potter and Dryden a reasonable opportunity to identify an alternative driver, and there is no showing that the impoundment and inventory were a pretext or ruse to further a criminal investigation. Therefore, the search was reasonable, and the district court properly denied the motion to suppress.

B.

Potter also contends that his sentence was a product of vindictiveness by the sentencing judge. He did not raise this claim in the district court, so we review only for plain error. Fed. R. Crim. P. 52(b). A presumption of vindictiveness applies in a re-sentencing proceeding where there is a "reasonable likelihood" that a defendant's sentence "is the product of actual vindictiveness" on the part of the sentencing judge. *Alabama v. Smith*, 490 U.S. 794, 799 (1989) (internal quotation omitted). But Potter cites no authority supporting such a presumption at an initial sentencing hearing, and this court has never held an initial sentence to be vindictive. *See United States v. Williams*, 976 F.3d 781, 786 (8th Cir. 2020), *vacated on other grounds*, 142 S. Ct. 1439 (2022).

Potter contends that the district court vindictively sentenced him in retaliation for his exercise of the right to a jury trial. He cites the fact that his sentence of 360 months' imprisonment was ten times greater than the sentence received by his co-conspirator, Dryden, who pleaded guilty. The district court, however, explained that Dryden's case differed from Potter's case in material respects. R. Doc. 283, at 86. One difference was Dryden's acceptance of responsibility: A guilty plea may justify leniency, and when a defendant is convicted after trial, "factors that may have indicated leniency as consideration for the guilty plea are no longer present." *Smith*, 490 U.S. at 801. Therefore, "no presumption of vindictiveness is warranted in the class of cases where a defendant who is convicted after trial alleges that 'similarly situated' defendants who pleaded guilty were sentenced to lesser punishment." *United States v. Fry*, 792 F.3d 884, 890 (8th Cir. 2015). In this case, the district court cited several factors—including but not limited to Dryden's guilty plea—that justified different sentences in the two cases.

Potter further contends that the district court punished him for submitting *pro se* filings that were "very harsh towards the Government and to the system and to [his] attorneys." The court's remarks, however, came in the context of explaining that Potter was well served by defense counsel and treated fairly by the system despite Potter's complaints. There is no plain error warranting relief.

The judgment of the district court is affirmed. Potter's *pro se* affidavit is stricken because "[i]t has long been Eighth Circuit policy that when a party is represented by counsel, we will not accept pro se briefs for filing." *United States v. Hunter*, 770 F.3d 740, 746 (8th Cir. 2014) (internal quotation omitted).

_____